## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| **DANNY GARRISON,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **VS.** | : | **NO. 5:23-CV-00348-TES-CHW** |
| | : | |
| **WARDEN GEORGE IVEY, *et al.,*** | : | |
| | : | |
| **Defendants.** | : | |
| ———————————— | : | |

## ORDER AND RECOMMENDATION

In accordance with the Court's previous orders and instructions, *pro se* Plaintiff Danny Garrison has filed a Recast Complaint seeking relief pursuant to 42 U.S.C. § 1983 (ECF No. 9) and a proper and complete motion for leave to proceed *in forma pauperis* (ECF No. 10). For the foregoing reasons, Plaintiff's motions to proceed *in forma pauperis* (ECF Nos. 2, 10) are **GRANTED**, and Plaintiff's claims that Defendant Sally was deliberately indifferent to his safety and that Defendant Ivey retaliated against him and involuntarily medicated him shall proceed for further factual development. It is **RECOMMENDED,** however, that Plaintiff's remaining claims be **DISMISSED without prejudice.**

### MOTION TO PROCEED IN FORMA PAUPERIS

Plaintiff first seeks leave to proceed without prepayment of the filing fee or security therefor pursuant to 28 U.S.C. § 1915(a). Plaintiff's submissions demonstrate that he is

presently unable to pay the cost of commencing this action.[1]  His applications to proceed *in forma pauperis* (ECF Nos. 2, 10) are therefore **GRANTED**.

However, even if a prisoner is allowed to proceed *in forma pauperis*, he must nevertheless pay the full amount of the $350.00 filing fee.  28 U.S.C. § 1915(b)(1).  If the prisoner has sufficient assets, he must pay the filing fee in a lump sum.  If sufficient assets are not in the account, the court must assess an initial partial filing fee based on the assets available.  Despite this requirement, a prisoner may not be prohibited from bringing a civil action because he has no assets and no means by which to pay the initial partial filing fee. 28 U.S.C. § 1915(b)(4).  In the event the prisoner has no assets, payment of the partial filing fee prior to filing will be waived.

Plaintiff's submissions indicate that he is unable to pay the initial partial filing fee. Accordingly, it is hereby **ORDERED** that his complaint be filed and that he be allowed to proceed without paying an initial partial filing fee.

## I.      Directions to Plaintiff's Custodian

Hereafter, Plaintiff will be required to make monthly payments of 20% of the deposits made to his prisoner account during the preceding month toward the full filing fee.  The clerk of court is **DIRECTED** to send a copy of this Order to Plaintiff's current place of incarceration.  It is **ORDERED** that the warden of the institution wherein Plaintiff is incarcerated, or the sheriff of any county wherein he is held in custody, and any successor custodians, shall each month cause to be remitted to the Clerk of this Court twenty percent

---

[1] Plaintiff does have stimulus funds in his prison trust fund account, but they are not presently available to him.  Mot. Proceed IFP 4, ECF No. 10.

(20%) of the preceding month's income credited to Plaintiff's account at said institution until the $350.00 filing fee has been paid in full.  28 U.S.C. § 1915(b)(2).  In accordance with provisions of the Prison Litigation Reform Act ("PLRA"), Plaintiff's custodian is hereby authorized to forward payments from the prisoner's account to the Clerk of Court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00.  It is **ORDERED** that collection of monthly payments from Plaintiff's trust fund account shall continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

## II.      Plaintiff's Obligations Upon Release

An individual's release from prison does not excuse his prior noncompliance with the provisions of the PLRA.  Thus, in the event Plaintiff is hereafter released from the custody of the State of Georgia or any county thereof, he shall remain obligated to pay those installments justified by the income to his prisoner trust account while he was still incarcerated.  The Court hereby authorizes collection from Plaintiff of any balance due on these payments by any means permitted by law in the event Plaintiff is released from custody and fails to remit such payments.  Plaintiff's Complaint may be dismissed if he is able to make payments but fails to do so or if he otherwise fails to comply with the provisions of the PLRA.

## PRELIMINARY REVIEW OF PLAINTIFF'S COMPLAINT

### I.       Standard of Review

The PLRA obligates the district courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee. *See* 28 U.S.C. § 1915A(a).  Screening is also required under 28 U.S.C. § 1915(e) when the plaintiff is proceeding IFP.  Both statutes apply in this case, and the standard of review is the same.  When conducting preliminary screening, the Court must accept all factual allegations in the complaint as true.  *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006) *abrogated in part on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003).  *Pro se* pleadings, like the one in this case, are "held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Id.* (internal quotation marks omitted).  Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b).

A claim is frivolous if it "lacks an arguable basis either in law or in fact."  *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (internal quotation marks omitted).  The Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless."  *Id.* (internal quotation marks omitted).  A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (first alteration in original). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

## II.   Factual Allegations

Plaintiff's claims arise from his previous incarceration at the Hancock State Prison in Sparta, Georgia. Recast Compl. 5, ECF No. 9. According to the Complaint, on June 26, 2023, Defendant George Ivey, the prison's warden, instructed Plaintiff to pack his property because he was moving to "next door with [Plaintiff's] buddy Rolland Phillips." *Id.* Plaintiff stated that he did not want to move because he did not "match up [with Phillips] in the system" and that Plaintiff had "to be classified and go into a room with some[one] the same thing/labled [sic] as me." *Id.* Defendant Ivey told Plaintiff that he

must be "cool" with Phillips because they had written statements together supporting a grievance concerning Defendant Ivey's previous conduct.  *Id.*[2]  Plaintiff then told Defendant Ivey that "this must be your way at getting back at us for filing the grievances on you"; Defendant Ivey responded, "call it what you want to call it I'm going to get this cell one way or another."  *Id.*  Plaintiff also overheard Phillips tell Defendant Ivey that Plaintiff could not come in his cell because Plaintiff was "gay & that he like boys and that we don't match up."  *Id.*  Defendant Ivey told Phillips that he was wasting his time.  *Id.*

After Defendant Ivey left, two other sergeants reported to Plaintiff's cell to effectuate the cell change.  Recast Compl. 6, ECF  9.  At this time, however, Phillips had "jamm[ed] his door with toothbrushes so [Plaintiff couldn't] come in."  *Id.*  Phillips only agreed to allow Plaintiff to enter the cell after prison officials threatened to pepper spray him.  *Id.*

Around 4:30 or 5:00 AM on June 28, 2023, Plaintiff contends Phillips sexually assaulted Plaintiff while Plaintiff was sleeping.  Recast Compl. 7, ECF No. 9.  Plaintiff and Phillips "scuffled," and Plaintiff "managed to get [Phillips] off [him]" and informed an orderly that his "roommate assaulted [him] in [his] sleep" and was "wiging [sic]."  *Id.*  The orderly told Plaintiff he would get an officer as soon as he finished distributing the breakfast trays.  *Id.*  By this time, Phillips had secured a knife and told Plaintiff he was going to kill him but "don't want to do it because he's in love with [Plaintiff]."  *Id.* at 7-8.

---

[2] Plaintiff contends Defendant Ivey sprayed Phillips with pepper spray "for no reason at all . . . just because [Phillips] wouldn't answer or come to the door to talk to him."  Recast Compl. 6, ECF No. 9.  Plaintiff wrote a witness statement supporting Phillip's grievance regarding the pepper spray incident.  *Id.*

Plaintiff was "trying to keep Phillips calm" when Defendant Sergeant Sally approached the cell. *Id.* at 8. Plaintiff told Defendant Sally, "I need help I need to get out of this room my roommate is wiging [sic] and just assaulted me in my sleep & he's threatening to kill me!" *Id.* Defendant Sally told Plaintiff that he would need to lock the flap so that he could go get some help, but he never returned. *Id.*

After Defendant Sally left, Phillips pulled both his and Plaintiff's property out of their locker boxes and "started trashing the room throwing things everywhere" while "screaming & saying 'he loves [Plaintiff] but has no choice to kill [Plaintiff]." Recast Compl. 8, ECF No. 9. Phillips then sexually assaulted Plaintiff again and "started throwing water all over [Plaintiff] & the room." *Id.* at 8-9. When Phillips heard officers approach the cell for shower call, he told Plaintiff not to say anything or he would kill him. *Id.* at 9. Phillips told the officer who approached the cell that they did not want to go to shower call. *Id.* While Phillips was interacting with this officer, Plaintiff retrieved a knife he had hidden at the head of his bed. *Id.* Phillips then again attempted to assault Plaintiff, but he slipped in some of the water he had thrown on the floor earlier. *Id.* Plaintiff "blanked out stabbing" Phillips, and the two inmates "tussl[ed]" all over the room for several minutes before officers responded to the commotion. *Id.* at 10. Officers separated the inmates and took them to medical. *Id.* Plaintiff suffered multiple stab wounds, and Phillips died from his injuries. *Id.*

Plaintiff was placed in a holding cell where he "pop[p]ed the sprinkler . . . to get the image of Rolland Phillips out of [his] mind." Recast Compl. 11, ECF No. 9. Defendant Ivey ordered medical to "shoot [Plaintiff] up with Hound Dog against [Plaintiff's] will, and

Plaintiff was transferred to Hays State Prison that same day.  *Id.*

Plaintiff contends that Defendants' actions and inaction concerning this incident violated his constitutional rights.  As a result of these constitutional violations, Plaintiff seeks monetary damages and unspecified injunctive relief.  Recast Compl. 13, ECF No. 9.  In addition, Plaintiff filed a letter requesting that the Court consider a "prisoner release order as a[] relief in this 1983 civil suit."  Letter 1, ECF No. 13.

### III.    Plaintiff's Claims

#### A.    Failure to Protect

Plaintiff's Recast Complaint first gives rise to claims that Defendants were deliberately indifferent to Plaintiff's safety.  This type of claim is generally cognizable under the Eighth Amendment to the United States Constitution.  *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  A prisoner asserting an Eighth Amendment failure-to-protect claim must allege (1) a substantial risk of serious harm; (2) the prison officials' deliberate indifference to that risk; and (3) causation.  *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013).  To establish deliberate indifference in this context, a prisoner must show that prison officials subjectively knew of the substantial risk of serious harm and that the prison officials knowingly or recklessly disregarded that risk.  *Id.* at 1332.

The subjective component of deliberate indifference requires a prisoner to allege facts showing that a prison official had "'more than a generalized awareness of risk'" to the prisoner.  *Marbury v. Warden*, 936 F.3d 1227, 1234 (11th Cir. 2019) (quoting *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1101-02 (11th Cir. 2014)).  The inmate can do this by pleading facts showing "that he was in an environment so beset by violence that

confinement, by its nature, threatened him with the substantial risk of serious harm" or by providing prison officials with details about a specific threat sufficient "to enable them to conclude that it presents a 'strong likelihood' of injury, not a 'mere possibility.'" *Id.* at 1235-36 (quoting *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015)).  The objective prong requires the prisoner to allege facts establishing that the prison official objectively "responded to the known risk in an unreasonable manner, in that he or she knew of ways to reduce the harm but knowingly or recklessly declined to act." *Id.* (internal quotation marks omitted).

Plaintiff's deliberate indifference claims in this case are based on the theory that he informed Defendants Ivey and Sally of the specific danger that Phillips posed to Plaintiff. Plaintiff states he informed Defendant Ivey that he did not match up with Phillips— presumably because Plaintiff is gay—and should not be moved into the cell with him; Phillips likewise advised Defendant Ivey that he did not want Plaintiff in his cell and repeatedly blocked the door to prevent Plaintiff from entering his cell.  At this stage, however, while Plaintiff has alleged facts indicating that Defendant Ivey knew that Plaintiff and Phillips did not want to be housed together, he has not alleged facts showing that Defendant Ivey knew that moving Plaintiff to Rolland Phillips' cell would place Plaintiff at a substantial risk of serious harm.  Indeed, Defendant Ivey's comments suggest he believed the two inmates were "cool" because Plaintiff wrote a statement in support of Phillips' grievance.  Recast Compl. 5, ECF No. 9.  Moreover, Plaintiff's own allegations suggest Plaintiff was not initially concerned that Phillips would harm him.  When Phillips told Defendant Ivey that he would allow Plaintiff to enter the cell as long as Phillips was

not handcuffed, Plaintiff said, "that's fine I don't care."  Recast Compl. 7, ECF No. 9.
Plaintiff's Recast Complaint, as pleaded, therefore fails to state a claim that Defendant Ivey
was deliberately indifferent to Plaintiff's safety when he moved Plaintiff into Rolland
Phillips' cell.  These claims are therefore subject to dismissal.

On the other hand, Plaintiff alleges he told Defendant Sally that he needed help
because his roommate was "wiging [sic]," had assaulted him, and was threatening to kill
him.  Recast Compl. 8, ECF No. 9.  Plaintiff contends Defendant Sally acknowledged that
Plaintiff needed help but left and never returned.  *Id.*  These allegations are sufficient to
permit Plaintiff's claims that Defendant Sally was deliberately indifferent to Plaintiff's
safety to proceed for further factual development.

B.  Retaliation Claims

Plaintiff also alleges that Defendant Ivey retaliated against him because he filed a
grievance or witness statement concerning Defendant Ivey's use of pepper spray against
Phillips.  Recast Compl. 5, ECF No. 9.  It is well established that an adverse action imposed
in retaliation for a prisoner's exercise of a constitutionally protected right is actionable.
*Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989) (per curiam).  To state a
retaliation claim, an inmate generally needs to show that he engaged in protected conduct;
that the prison official's retaliatory conduct adversely affected the protected conduct; and
a causal connection between the protected conduct and the adverse action.  *See, e.g., Moton
v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011).   Even assuming if Defendant Ivey did
not know that moving Plaintiff to Rolland Phillips' cell was potentially dangerous, he
certainly knew neither inmate wanted to be housed with the other.  In addition, another

officer asked Plaintiff why Defendant Ivey was "always messing with yall two," suggesting Defendant Ivey acted with malicious intent.  Recast Compl. 6, ECF No. 9.  At this early stage, the Court cannot say that Plaintiff's claim that Defendant Ivey gave Plaintiff an unfavorable housing assignment in retaliation for Plaintiff's participation in the prison grievance process is necessarily frivolous.  As such, this claim shall also proceed for further factual development.

C.   Forced Medication

Plaintiff also alleges that Defendant Ivey ordered medical staff to forcibly inject Plaintiff with a medication Plaintiff refers to as "Hound Dog," even though he was "not on forced meds."  Recast Compl. 11, ECF No. 9.[3]  The United States Supreme Court has held that the Due Process Clause permits the State to forcibly administer antipsychotic drugs to an inmate with a serious mental illness "if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest."  *Washington v. Harper*, 494 U.S. 210, 227 (1990).  In *Washington*, the Court upheld a state policy that required the decision to involuntarily medicate a prisoner to be made by a hearing committee composed of a psychiatrist, a psychologist, and the associate superintendent of the facility.  *Id.* at 229.  The decision was subject to review by the superintendent, and the inmate further had the right to seek judicial review of the decision in a state court.  *Id.*  The Court concluded that such procedural safeguards were adequate to ensure that the prisoner's interests were taken into account and otherwise met the requirements of due process.  *See id.* at 235.

---

[3] Plaintiff may be referring to "Haldol," an antipsychotic medication.

Given the circumstances of this case, involuntary medication of Plaintiff may have been appropriate, but Plaintiff's Recast Complaint also suggests that this decision was neither made by a medical professional nor subject to any of the procedural safeguards set forth in *Washington*.  The Court therefore cannot say at this early stage that Plaintiff's claim concerning his involuntary medication is necessarily frivolous.  As such, Plaintiff's claim that Defendant Ivey involuntarily medicated him shall proceed for further factual development.

## CONCLUSION

For the foregoing reasons, Plaintiff's motions to proceed *in forma pauperis* (ECF Nos. 2, 10) are **GRANTED**, and Plaintiff's claims that Defendant Sally was deliberately indifferent to his safety and that Defendant Ivey retaliated against him and involuntarily medicated him shall proceed for further factual development.[4]  It is **RECOMMENDED**, however, that Plaintiff's remaining claims be **DISMISSED without prejudice.**

---

[4] The Court also notes the possibility that the claims that are proceeding for further factual development could implicate the United States Supreme Court's holding in *Younger v. Harris*, 401 U.S. 37 (1971).  Pursuant to *Younger,* federal courts must refrain from intervening with pending state criminal proceedings when the party requesting federal intervention has an adequate remedy at law and will not suffer irreparable injury.  *Id.* at 53. *Younger* abstention is thus required where (1) state judicial proceedings are pending; (2) the state proceedings involve important state interests; and (3) the state proceedings afford adequate opportunity to raise the constitutional issue.  *See, e.g., Newsome v. Broward Cnty. Public Defenders*, 304 F. App'x 814, 816 (11th Cir. 2008) (per curiam) (citing *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)); *see also Doby v. Strength*, 758 F.2d 1405, 1406 (11th Cir. 1985) (per curiam) (extending *Younger* to § 1983 actions for money damages).  Plaintiff does appear to have criminal proceedings pending against him regarding the stabbing of Rolland Phillips.  At this early stage, however, the Court does not have sufficient information to determine whether a dismissal or stay pursuant to *Younger* is applicable.

**OBJECTIONS**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Tilman E. Self, III, United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation.  Any objection is limited in length to **TWENTY (20) PAGES**.  *See* M.D. Ga. L.R. 7.4.  The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections.  Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made.  *See* 11th Cir. R. 3-1.

**ORDER FOR SERVICE**

Having found that Plaintiff has made colorable constitutional violation claims against Defendants Ivey and Sally, it is accordingly **ORDERED** that service be made on Defendant and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act.  Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

**DUTY TO ADVISE OF ADDRESS CHANGE**

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address.  Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

13

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute.  Defendants are similarly advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed.  This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS,
## PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court.  A party need not serve the opposing party by mail if the opposing party is represented by counsel.  In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court.  If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendant from whom discovery is sought by the Plaintiff.  The

14

Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed.  Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure.  The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian.  **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendant (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court.  This 90-day period shall run separately as to Plaintiff and Defendants beginning on the date of filing of Defendants' answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court.  No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party.  The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery:  except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each

15

party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party.  No party shall be required to respond to any such requests which exceed these limitations.

### REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities.  Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

**SO ORDERED AND RECOMMENDED**, this 27th day of November, 2023.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge

16