IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| DANNY GARRISON,<br><br>*Plaintiff*,<br><br>v.<br><br>Warden GEORGE IVEY and Sergeant JOSEPH SALAD,<br><br>*Defendant*. | CIVIL ACTION NO.<br>5:23-cv-00348-TES-CHW |

**ORDER ADOPTING THE UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This is a pro se civil case in which Plaintiff Danny Garrison asserts First, Eighth, and Fourteenth Amendment claims under 42 U.S.C. § 1983 for events that took place on June 26 and 28, 2023, during his incarceration at Hancock State Prison in Sparta, Georgia. [Doc. 9, pp. 5, 11–12].

**A.     Introduction**

The Magistrate Judge's Report and Recommendation ("R&R") [Doc. 58] provides a thorough rundown of the facts of this case, but in a nutshell, Plaintiff, in his Recast Complaint [Doc. 9], alleges that Defendant George Ivey, the then-Warden of Hancock State Prison, violated his First Amendment rights by retaliating against him for providing a witness statement in support of co-inmate Roland Phillips' grievance that concerned Defendant Ivey. Plaintiff believes that Defendant Ivey forced him and

Phillips to be cellmates—instead of in neighboring cells—in an act of retaliation for that grievance. [*Id.* at pp. 5–6]. As for his Eighth Amendment claim, Plaintiff alleges that Defendant Joseph Salad, a prison official at Hancock State Prison, was deliberately indifferent to his safety after Plaintiff informed him that he feared for his life. [*Id.* at p. 8]; [Doc. 58, p. 2].

On the morning of June 28, Plaintiff had just woken up to Phillips—apparently "wigging" from the effects of crystal meth—sexually assaulting him. [Doc. 9, p. 7]; [Doc. 58, p. 6 n.7]; *see also* [Doc. 59, p. 5 n.5 ("[T]he Court, for purposes of summary judgment, must view the record in the light most favorable to Plaintiff and accepts as fact that Plaintiff awoke to a sexual assault.")]. When Defendant Salad came by their cell, Plaintiff told Defendant Salad that he feared for his life and that, "I had just been assaulted by my roommate. He's wigging. He's threatening to kill me. I need to get out of this room." [Doc. 9, p. 8]; *see also* [Doc. 58, p. 6]. Defendant Salad allegedly said that he was going to "go get . . . some help!" [Doc. 9, p. 8]. Defendant Salad, though, "never came back," and a fight with sharp weapons ensued between Plaintiff and Phillips that resulted in Plaintiff killing Phillips. [*Id.* at pp. 8–11]. Then, once prison officials moved Plaintiff and Phillips to the medical ward, Plaintiff "pop[p]ed the sprinkler in [his] holding cell to get the image of . . . Phillips out of [his] mind." [*Id.* at p. 11]. This, however, led to Plaintiff receiving two doses of medication "against [his] will." [*Id.*]. Those unwanted medications serve as the basis for Plaintiff's Fourteenth Amendment

2

claim against Defendant Ivey. [*Id.*].

Following discovery, Defendants Ivey and Salad filed a Motion for Summary Judgment [Doc. 41], which the Magistrate Judge recommends the Court grant in part and deny in part. [Doc. 58]. If adopted, the Court would grant summary judgment to Defendant Ivey on Plaintiff's First Amendment retaliation claim and his Fourteenth Amendment forced-medication claim. [Doc. 58, p. 22]. However, as to Plaintiff's Eighth Amendment deliberate indifference claim against Defendant Salad, the Magistrate Judge recommends that the Court deny summary judgment. [*Id.*].

Neither Plaintiff nor Defendant Ivey filed an objection to the R&R. [Doc. 63, p. 1 (Plaintiff's letter to the Clerk of Court stating that he has no objections to the R&R)]. Defendant Salad, however, filed an Objection [Doc. 60] arguing that because the Magistrate Judge failed to "give conclusive weight" to a statement made by Plaintiff in his deposition, the Court should reject the Magistrate Judge's recommendation as to Plaintiff's claims against him. [Doc. 60, pp. 1, 6]. Accordingly, the Court reviews portions of the R&R related to Plaintiff's claims against Defendant Ivey for clear error and the portions related to Plaintiff's claims against Defendant Salad de novo. 28 U.S.C. § 636(b)(1)(A) & (C).

### B.     Defendant Salad's Objection (Doc. 60)

Defendant Salad raises three points of contention with the Magistrate Judge's R&R. [Doc. 60, p. 1]. His first objection centers around the Magistrate Judge's conclusion

that a jury could find that Defendant Salad drew the inference of a substantial risk of serious harm notwithstanding Plaintiff's "testimony that Defendant Salad thought Plaintiff was joking when [Plaintiff] and [Phillips] asked to be separated." [*Id.*]. Second, Defendant Salad takes issue with the Magistrate Judge's conclusion "that the facts of this case are materially distinguishable" from *Blackshear v. Smith*. No. 7:20-CV-00031-WLS-TQL, 2020 WL 5870206 (M.D. Ga. Sept. 8, 2020), *adopted by* 2021 WL 11728166 (M.D. Ga. Jan. 29, 2021). And lastly, Defendant Salad objects to the Magistrate Judge's recommendation to deny Defendant Salad qualified immunity. [Doc. 60, p. 1].

1. **Conclusive Weight**

Defendant Salad's first enumeration of error concerns the Magistrate Judge not "giv[ing] conclusive weight" to Plaintiff's testimony where *Plaintiff* thought that Defendant Salad thought that Plaintiff and Phillips were joking, had "cooked [the threats] up and [were] playing." [Doc. 60, pp. 1, 4]. In other words, Defendant Salad labels the Magistrate Judge's *proper* application of summary-judgment standards as error, and asks the Court, in its review of the R&R, to reverse course and misapply those standards in his favor. Helpfully, Defendant Salad agrees that courts construe evidence in the light most favorable to the nonmoving party: here, Plaintiff. [*Id.* at p. 2 (quoting *Skrtich v. Thornton*, 280 F.3d 1295, 1299 (11th Cir. 2002))]; Fed. R. Civ. P. 56(c). In other words, "all justifiable inferences are to be drawn in [the nonmovant's] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). That is exactly how the

4

Magistrate Judge considered the evidence in this case, yet Defendant Salad insists that the Magistrate Judge should've construed Plaintiff's testimony about *Defendant Salad's* thoughts in the light most favorable to him—not Plaintiff. To give "conclusive weight" to this specific testimony means that the Magistrate Judge would've had to make a court-based factual determination that construes the evidence in a light that is *unfavorable* to Plaintiff as the nonmovant.

Defendant Salad tells the Court that "Plaintiff unequivocally testified that Defendant Salad believed he and . . . Phillips were 'playing' or pulling a 'stunt'" "because inmates . . .would often lie . . . to get out of their cell." [Doc. 60, p. 2]; [Doc. 58, p. 13]. That may be true, and "[l]ay witnesses may sometimes testify, based on their own observations and perceptions, about the state of mind of another person." *Doe v. Rollins College*, 77 F.4th 1340, 1358 (11th Cir. 2023). After all, under Federal Rule of Evidence 701, "[i]f a witness is not testifying as an expert," any opinion testimony is limited to testimony that "is rationally based on the witness's perception"; "helpful to clearly understanding the witness's testimony or to determining a fact in issue"; and "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

Still though, Plaintiff's lay opinion about what Defendant Salad thought or Defendant Salad's state of mind likely amounts to nothing more than pure speculation

5

and is something the Court will have to monitor with careful scrutiny at trial.[1] And, again, quite helpfully, Defendant Salad agrees that courts cannot weigh evidence or assess credibility at summary judgment. [Doc. 60, p. 2 (citing *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018))]. The weight given to Plaintiff's thoughts about Defendant Salad's thoughts is unequivocally within the province of the jury.

If, at trial, Plaintiff testifies about his speculative belief that he thought Defendant Salad merely perceived Plaintiff and Phillips to be joking or pulling a stunt, then the jury is more than capable of making its own credibility determination.[2] An individual can certainly think that a person doesn't perceive a particular danger, but that doesn't mean the danger is non-existent. "[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Anderson*, 477 U.S. at 255. Succinctly put,

> [s]ummary judgment is not a time for fact-finding; that task is reserved for trial. Rather, on summary judgment, the district court must accept as fact all allegations the [nonmoving] party makes, provided they are sufficiently

---

[1] In *John Hancock Mutual Life Insurance Co. v. Dutton*, the Former Fifth Circuit addressed the issue of a person testifying about "his views concerning the feelings of another person." 585 F.2d 1289, 1294 (5th Cir. 1978).
> The argument has been made that, because we cannot directly see, hear, or feel the state of another person's mind, . . . testimony to another person's state of mind is based on merely conjectural and therefore inadequate data. This argument is finical enough; and it proves too much, for if valid it would forbid the jury to find a verdict upon the supposed state of a person's mind. If they are required and allowed to find such a fact, it is not too much to hear such testimony from a witness who has observed the person exhibiting in his conduct the operations of his mind.

*Id.*

[2] That, however, rests on the bold presumption that Plaintiff's testimony can satisfy Rule 701 such that the Court would even allow it to be heard by the jury. *See also* Fed. R. Evid. 602.

6

> supported by evidence of record. So[,] when competing narratives emerge on key events, courts are not at liberty to pick which side they think is more credible. Indeed, if "the only issue is one of credibility," the issue is factual, and a court cannot grant summary judgment.

*Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020) (internal citations omitted). The question becomes: Is what Plaintiff thought Defendant Salad thought really credible? The Court can't answer that. "[A] judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Here, all things considered, "there is evidence that Defendant [Salad] did draw . . . an inference" of a substantial risk of serious harm "based on his response to Plaintiff that he would go get help and come back." [Doc. 58, p. 14]. "[I]f a reasonable jury could make more than one inference from the facts, and one of those permissible inferences creates a genuine issue of material fact, a court cannot grant summary judgment"; it "must hold a trial to get to the bottom of the matter." *Sconiers*, 946 F.3d at 1263.

This brings the Court to a much larger factual issue in this case. According to Plaintiff, Defendant Salad approached, visited, came by, or whatever the phrase may be, his and Phillips' cell the morning of June 28. It was then that Plaintiff claims he informed Defendant Salad of the sexual assault and Phillips' life-threatening comments. [Doc. 58, p. 6]. Defendant Salad, on the other hand, states in his signed declaration that he never visited Plaintiff's cell that morning and that Plaintiff never told him of any

7

sexual assault, threats, or asked to be removed from his cell. [Doc. 49-1, Salad Decl., ¶¶ 4–7]. Therein lies a massive conundrum (especially as it relates to qualified immunity) that the Court simply cannot unravel without the assistance of a jury. There is no way for the Court to determine which version is true because judges cannot weigh the evidence and determine the truth of the matter. *Anderson*, 477 U.S. at 249. This is a prime example of where "competing narratives emerge on key events," so this case will go to trial against Defendant Salad. *Sconiers*, 946 F.3d at 1263. First, to unravel that potentially end-all-be-all factual dispute: Was Defendant Salad even present?[3] And, second, during that trial, the parties can argue to the jury their respective positions about Plaintiff's "thoughts" concerning Defendant Salad's state of mind.

   2.   *Blackshear v. Smith*

Next, Defendant Salad objects to the Magistrate Judge's conclusions regarding *Blackshear v. Smith*.[4] [Doc. 60, pp. 5–6]. However, the Court agrees with the Magistrate

---

[3] Again, the Magistrate Judge properly construed the evidence in favor Plaintiff's favor as the nonmovant and analyzed Plaintiff's deliberate indifference claim against Salad as if Salad was present. [Doc. 58, p. 6].

[4] In *Blackshear*, the court found:
> Plaintiff was moved to a two-man cell with Hinton because of an altercation with his prior cellmate that had resulted in Plaintiff being stabbed. Defendant approved the movement of Plaintiff into the cell with Hinton. Hinton told Defendant that he would kill Plaintiff if Defendant moved Plaintiff into Hinton's cell. Defendant responded that Hinton "ain't gonna fuck with her . . . he ain't gonna do shit." Plaintiff resided with Hinton in the two-man cell without reported incident for eight days. Plaintiff, himself, did not feel that he was in danger, so he did not request protective custody, even though he knew how to do so. Plaintiff never reported any concerns to anyone about being in a cell with Hinton and Plaintiff never spoke to Defendant about being in a cell with Hinton. During a shakedown eight days after Plaintiff was moved into Hinton's cell, Hinton stabbed Plaintiff.

2021 5985323, at *4.

Judge's analysis and determination that *Blackshear* "is distinguishable from the present case" on the basis that there was no subjective inference drawn about a risk of harm in *Blackshear*. [*Id.* at p. 14]. Here, based on Defendant Salad's supposed statement that he would "go get . . . help" and come back, there is evidence that a subjective inference may have been drawn.[5] [*Id.*]; [Doc. 9, p. 8]; *Anderson*, 477 U.S. at 255 ("The evidence of the [nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor.").

### 3. Qualified Immunity

Finally, with respect to qualified immunity, Defendant Salad's third issue raised in his Objection, the Court looks to whether the facts alleged or shown make out a violation of a constitutional right and, if so, whether that right was "clearly established" at the time of the alleged misconduct. [Doc. 58, p. 19 (quoting *Underwood v. City of Bessemer*, 11 F.4th 1317, 1328 (11th Cir. 2021))]. "Qualified immunity is a doctrine that shields government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Stalley v. Cumbie*, --- F.4th ----, 2024 WL 5244627, at *8 (11th Cir. Dec. 30, 2024) (quoting *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019)). "Accordingly, the doctrine protects all but

---

[5] In any event, it really doesn't matter whether "the Magistrate Judge [correctly or] incorrectly concluded that *Blackshear* is materially distinguishable from this case" because *Blackshear* isn't binding. [Doc. 60, p. 5].

9

the plainly incompetent or those who knowingly violate the law. *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)) (alteration adopted).

Now, under the Eighth Amendment,

> [I]n addition to an "objectively serious" deprivation, a deliberate-indifference plaintiff must show that the defendant acted with "subjective recklessness as used in the criminal law," and "to do so, the plaintiff must demonstrate that the defendant actually knew that his conduct—his own acts or omissions—put the plaintiff at substantial risk of serious harm.

*Wade v. McDade*, 106 F.4th 1251, 1253 (11th Cir. 2024). Based on this record, there isn't enough for the Court to determine, well, pretty much anything, but certainly not whether (1) Defendant Salad visited Plaintiff's cell on the morning of June 28, and (2) whether Defendant Salad's actions (or inactions) *were reasonable*—a key factor in determining liability under the Eighth Amendment. *Stalley*, 2024 WL 5244627, at *10 ("A reasonable decision does not have to be a perfect decision, and it does not require that any potential harm was actually averted.").

Defendant Salad argues that there is "no case holding *that [his] conduct* based on the record evidence here—that [*he*] did not get help or act to remove an inmate from a cell in response to what *he* thought was a joke or stunt—amounts to criminal recklessness." [Doc. 60, p. 6]. But, Defendant Salad's declaration never says that *he* thought it was a joke or a stunt, and his arguments in his Objection twist the evidence. He merely states, that "[i]t is not uncommon for inmates on administrative segregation to lie or otherwise trick prison officials to open cell doors." [Doc. 49-1, Salad Decl., ¶ 8].

10

In no way whatsoever does Defendant Salad connect that statement to his perceptions of Plaintiff's situation on the morning of June 28. He doesn't say that "[i]t is not uncommon for inmates on administrative segregation to lie or otherwise trick prison officials to open cell doors[, and that's all I thought Plaintiff and Phillips were doing that morning]." *See* [*id.*].

In fact, it's interesting that Defendant Salad even makes such an argument in trying to obtain qualified immunity given his statements made under penalty of perjury that he never visited Plaintiff's cell that morning and, therefore, was never told anything about a sexual assault or Phillip's threat on Plaintiff's life.[6] [Doc. 49-1, Salad Decl., ¶¶ 4–5]. Defendant Salad cannot argue that he never went to the cell on the one hand, but if he did, he is immune from liability because no case says that he couldn't do whatever he's alleged to have done or not done. That's like a criminal defendant arguing that he was never at the scene of the murder, but if he was, he was justified in killing the victim. You don't get to have it both ways.

The truth is somewhere out there, but it's absolutely not on this current record. Since judges can't pick and choose which side of a conflicting story they believe, summary judgment with respect to Defendant Salad must, as the Magistrate Judge recommended, be denied, and the Court will hold a trial to get to the bottom of this

---

[6] Defendant Salad can't base his qualified immunity arguments on *his* assertion that "*he* thought [it] was a joke or stunt" and then have his declaration say what it says. *Compare* [Doc. 60, p. 6], *with* [Doc. 49-1, Salad Decl.].

matter. *Sconiers*, 946 F.3d at 1263,

### C.  Conclusion

For the foregoing reasons, the Court **ADOPTS** the United States Magistrate Judge's Report and Recommendation [Doc. 58] **AND MAKES IT THE ORDER OF THE COURT**.[7] The Court **GRANTS in part** and **DENIES in part** Defendants George Ivey and Joseph Salad's Motion for Summary Judgment [Doc. 41]. The Court **GRANTS** summary judgment to Defendant Ivey and **DENIES** summary judgment to Defendant Salad.[8] The Court will hold a Pretrial Conference at 11:00 a.m. on February 11, 2025, in Macon, Georgia. This case is set for trial on February 18, 2025, and Court will soon order the parties to develop a Pretrial Conference Order.

**SO ORDERED**, this 13th day of January, 2025.

> S/ *Tilman E. Self, III*
> **TILMAN E. SELF, III, JUDGE**
> **UNITED STATES DISTRICT COURT**

---

[7] Plaintiff's motions requesting the Court to re-open discovery are **DENIED**. [Doc. 61]; [Doc. 62]; *see also* [Doc. 44].

[8] The Clerk of Court is **DIRECTED** to **TERMINATE** Defendant George Ivey from this case.