# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| DANNY GARRISON,<br><br>    *Plaintiff*,<br><br>v.<br><br>Lieutenant JOSEPH SALAD,[1]<br><br>    *Defendant*. | CIVIL ACTION NO.<br>5:23-cv-00348-TES-CHW |

## ORDER DENYING MOTION FOR NEW TRIAL

The above-captioned case is a civil rights case brought under 42 U.S.C. § 1983. [Doc. 9, p. 1]. In it, Plaintiff Danny Garrison, proceeding pro se, asserted First, Eighth, and Fourteenth Amendment claims against Warden George Ivey and Lieutenant Joseph Salad for events that took place on June 26 and 28, 2023, during his incarceration at Hancock State Prison in Sparta, Georgia. [*Id.* at pp. 5, 11–12]. Plaintiff's claims against Defendant Ivey were resolved at summary judgment, and on Monday, October 6, 2025, this case proceeded to trial on a single Eighth Amendment claim against Defendant Salad. *See generally* [Doc. 58], *in connection with* [Doc. 64]. At trial, Plaintiff represented himself without legal counsel. *See* [Doc. 97]; *see also* [Doc. 1, pp. 1, 13].

Since initiating this case in October 2023, Plaintiff has filed motions, participated

---

[1] At the outset of this case, Defendant Salad held the rank of sergeant. Since then, he has been promoted to lieutenant.

in discovery, and authored briefs in a pro se capacity. On the morning of trial, though, Plaintiff informed the Court that he hired a lawyer, Mr. Christopher Palazzola, to represent him at trial. Based on that, Plaintiff—who was in court and at the plaintiff's table lawyerless—orally moved to continue. Since Mr. Palazzola wasn't present in court and had not made an entry of appearance, the Court proceeded.

### A.   Procedural History

As a brief recap of this case's procedural history, Plaintiff brought, *inter alia*, a failure-to-protect claim against Defendants Ivey and Salad.[2] *See generally* [Doc. 9]; [Doc. 14]. Following discovery, Defendant Salad unsuccessfully moved for summary judgment. [Doc. 41]; [Doc. 58]; [Doc. 64]. After adopting the United States Magistrate Judge's Report and Recommendation [Doc. 58] and denying Defendant Salad's Motion for Summary Judgment [Doc. 41] on January 13, 2025, the Court scheduled trial for February 18, 2025. [Doc. 64, p. 12]; [Doc. 67].

In his Response [Doc. 106] to Plaintiff's Motion for New Trial [Doc. 103], Defendant Salad states, "Plaintiff helped prepare the proposed pretrial order, asked for exhibits to be prepared on his behalf, and appeared at the February 11, 2025, pretrial conference." [Doc. 106, p. 1]. At that pretrial conference, the Court expressed its concerns regarding an indictment filed against Plaintiff in the Superior Court of

---

[2] Again, Plaintiff's claims against Defendant Ivey were resolved at summary judgment. *See generally* [Doc. 64]. It was only Defendant Salad who proceeded to trial. [*Id.* at p. 12].

Hancock County, Georgia, arising from the same set of facts as this case. [Doc. 73]. After much discussion, the Court assured Plaintiff that his civil case, this case, would pick up "right where we left off"—at trial—and the parties agreed to administratively close it until resolution of the related state criminal proceedings. *See* [Doc. 75]. In its Order Administratively Closing Case [Doc. 75], the Court told Plaintiff that he "must file a motion to reopen" this case "[w]ithin 30 days after resolution of the related state criminal proceedings from Hancock County." [*Id.* at p. 2].

On August 7, 2025, the jury in the state criminal trial returned a verdict of not guilty against Plaintiff, and on that same day, he moved the Court to reopen this case.[3] [Doc. 76, p. 1]. On August 12, 2025, the Court reopened Plaintiff's case, and it set a pretrial conference and trial date for September 4, 2025, and October 6, 2025, respectively. [Doc. 77]; [Doc. 78]; [Doc. 79]. As mentioned above, trial commenced on October 6, 2025, despite Plaintiff's oral request for a continuance at the outset of trial. [Doc. 93, p. 1]. His reason: an attorney—for the first time in this case—had agreed to represent him the week before. The Court denied Plaintiff's oral motion to continue because no attorney had entered an appearance for Plaintiff. [*Id.*]. During trial, Plaintiff testified on his own behalf, presented a witness in support of his case, and cross-examined Defendant Salad and his witnesses. [*Id.* at pp. 1–2]. After both parties

---

[3] Plaintiff also, within that motion, moved for the appointment of counsel, but the Court denied that request, *see, e.g.*, [Doc. 81], for the reasons previously explained to him on numerous occasions. [Doc. 7, pp. 1–2]; [Doc. 31, p. 1]; [Doc. 56].

3

presented their cases, the Court instructed the jury on the law. [*Id.* at p. 2]. After this, the jury deliberated and then rendered a verdict in favor of Defendant Salad. [Doc. 97, p. 1].

The Court entered Judgment [Doc. 99] accordingly on October 8, 2025. And, as Defendant Salad points out in his Response, "[a]t no point during trial did Plaintiff move for a directed verdict or judgment as a matter of law." [Doc. 106, p. 2]. A month after trial, on November 5, 2025, Mr. Palazzola filed his Entry of Appearance [Doc. 102] for Plaintiff and simultaneously filed the Motion for New Trial pending before the Court. You may have noticed that the filing date of Mr. Palazzola's Entry of Appearance post-dates the October 6 trial. Here's why.

### B.    Mr. Palazzola's Filing Issues

Per the CM/ECF Administrative Procedures for the Middle District of Georgia, all licensed attorneys "shall" file electronically. *See* CM/ECF Admin. Procs.,[4] at p. 5 (revised Sept. 28, 2022) ("All documents submitted for filing in civil and criminal cases, regardless of case commencement date, shall be filed electronically using CM/ECF."). The exceptions to electronic filing apply to "pro se litigants who are incarcerated"; "charging documents in a criminal case"; "[a]ffidavits for search warrants"; certain documents "containing the signature of a defendant"; and "[d]ocuments or exhibits which cannot be scanned or otherwise converted to electronic format such as maps,

---

[4] The CM/ECF Administrative Procedures for the Middle District of Georgia are available at https://www.gamd.uscourts.gov/sites/gamd/files/AdministrativeProceduresElectronicFiling.pdf.

4

charts, video tapes, or other items illegible when scanned." *Id.* at p. 18.

"It was approximately six days before the scheduled start of trial [Plaintiff] spoke to [Mr. Palazzola]," who says he "prepared" a continuance motion "that still has not been filed as it took [him] over a week" to get access to Public Access to Court Electronic Records ("PACER"). [Doc. 103, p. 2]. Six days before trial—that would be Tuesday, September 30, 2025. Again, there was no entry of appearance filed by Plaintiff's supposed attorney as of the morning of trial, but it appears Mr. Palazzola made some effort to contact the Clerk of Court—specifically, the Clerk's Director of Operations and CM/ECF Administrator—regarding his electronic filing difficulties. The CM/ECF Administrator accepted Mr. Palazzola's Declaration of Technical Difficulty [Doc. 104] for non-electronic filing and placed it on the record at 4:16 P.M. on Sunday, October 5, 2025.

In that declaration, Mr. Palazzola states twice that he was "unable to file in a timely manner," but he doesn't state what he was "unable to file." [Doc. 103, p. 1]. Was it an entry of appearance? A motion to continue? Both? Mr. Palazzola also says that his declaration was "to apologize" to the Court and "to inform [it] and [opposing counsel]" of the reasons for his electronic filing issues:

> I am having issues logging into pacer [*sic*], I was able to access pacer [*sic*] but, [*sic*] once I tried to Efile I was kicked out of the system. I have been on hold with pacer [*sic*] for two hours and have yet to speak to a representative. The backup code I received from pacer to authenticate my account are [*sic*] not working.

5

[*Id.* at pp. 1, 2 n.1]. Mr. Palazzola's effort to inform the Court directly (an effort which he himself characterizes as "desperate"), consisted of a single phone call turned voicemail—not an email, but a voicemail—to the undersigned's Chambers at 9:21 A.M. on Friday, October 3, 2025. [*Id.* at p. 3]. In that voicemail, which the Court has transcribed below to the best of its ability, Mr. Palazzola told the Court:

> This is Chris Palazzola. I am an attorney, and I have just been retained, umm, on Danny Garrison's case. It's civil action number 5:23-cv-00348. Umm, and I have a giant problem, he told me that there is either a hearing or a trial on Monday. And, umm, I was thinking for a continuance, but I can't get on to PACER, and I, they won't let me file, umm, in, at the Clerk's Office. And, I can't get ahold of PACER because they don't answer their phones. Umm, and I can't reset my password because they don't respond to emails. Umm, it's, uhh, I don't, the Clerk said I got to get up an order from a judge, but and then they said with that they will accept an entry of appearance. Umm, if you could please give me a call back, I'm having a, this is the second day, umm, having a, I guess a meltdown, I, this is, uhh, chasing my tail. It's Chris Palazzola, 404-310-7964. Thank you. Bye-bye.

Statements by Christopher Palazzola, voicemail to Chambers for Judge Tilman E. Self, III (received October 3, 2025, at 09:21 A.M.) (on file with author). Mr. Palazzola's voicemail, though, should've been the starting point of his efforts to contact the Court—not his one and only effort.

Candidly, the Court didn't hear Mr. Palazzola's voicemail until the following Monday morning—the morning of trial. Having not heard back from the Court, Mr. Palazzola had plenty of options at his disposal to get his issues before it—like simply showing up the morning of trial. As the Court discusses below, though, that wasn't a possibility for Mr. Palazzola. The other options might've taken a little more effort, but

6

they're still reasonably "doable." Mr. Palazzola could've contacted opposing counsel since he was, after all, "able to access" PACER (but not file electronically). [Doc. 104, p. 1]. So, he could've easily found opposing counsels' contact information since their information is on nearly every paper filed in this case or, even still, he could've asked his client for their contact information during whatever meeting occurred prior to his being retained on September 30, 2025. Mr. Palazzola found the Court's phone number, but for some unexplained reason, he "was unable to find" an email address. *See* [Doc. 103, p. 3 (Mr. Palazzola's statement that "there's no more fax machines" and he "was unable to find an email address of [*sic*] leaving a voicemail was the best that could be done")]. With that, one could easily assume he ought to be able to find opposing counsels' contact information on PACER given that he was "able to access" it. *See* [Doc. 104, p. 1 (Mr. Palazzola's statement that he "was able to access" PACER)]. Had Mr. Palazzola simply Googled "Middle District of Georgia" and went to the undersigned's tab; he would've seen the email address for the Courtroom Deputy. The Court obviously doesn't know how Mr. Palazzola obtained the phone number for Chambers, but if he did so via the Middle District of Georgia's website, the email address for the Courtroom Deputy is listed on the same page as the Chamber's phone number. *But see* [Doc. 103, p. 3]. An email would have been a very simple solution. In that email, Mr. Palazzola could have detailed his filing issues and attached the "prepared" motion to continue for the Court's review. [*Id.* at p. 2]. This is not to say that the Court would have

7

granted a continuance, but had Mr. Palazzola made a reasonable effort to get a continuance motion "before" the Court, the Court would have, at least, had the opportunity to place it on the record.

In seeking a new trial for Plaintiff, Mr. Palazzola confidently states, "Federal court makes it impossible for anyone having computer problems to file anything[,] and if pacer [*sic*] is having problems[,] then nobody files anything presumably." [*Id.* at p. 3]. Now, that's not true at all. If it were, then courts wouldn't allow for attorneys to file declarations of technical difficulties just like Mr. Palazzola did in this case. [Doc. 104].

Regardless of the CM/ECF Administrative Procedures for the Middle District of Georgia, Federal Rule of Civil Procedure 5(d)(2) clearly states: "A paper not filed electronically is filed by delivering it: (A) to the clerk; or (B) to a judge who agrees to accept it for filing, and who must then note the filing date on the paper and promptly send it to the clerk." Fed. R. Civ. P. 5(d)(2)(A)–(B). So, by its plain language, Rule 5(d)(2) allows for non-electronic filing, but, of course, you have to know about that Rule. In this Court's opinion, trying the Rule 5(d)(2) route doesn't seem to be too great an expectation for a licensed attorney who (A) wants to continue a case that he has (B) agreed to take fully knowing that (C) *trial* was set to begin the next business day.

Nevertheless, Mr. Palazzola states that he was "on hold" for "three hours" trying to reach a PACER representative on "the 800 number . . . in Texas" on Thursday, October 2, 2025, and during the "entire day" on Friday, October 3, 2025, to get his

PACER "account up and running." [Doc. 103, p. 2 n1]. According to him, he "tried everything short of driving to Texas" to fix his PACER issues. [*Id.*]. Sure, everything short of doing the most basic Google search to find an email address for the Court or simply driving 90 minutes from Atlanta to the Macon Division (or any of the district's divisions for that matter) to non-electronically file an entry of appearance and motion to continue under Rule 5(d)(2). *See* [*id.*]. That's what a zealous advocate would've done in this scenario.

At bottom, Mr. Palazzola agreed to take Plaintiff's case, and Mr. Palazzola knew—from his client—that trial began on October 6, 2025. If he was unable to ethically represent Plaintiff, he ought to have declined his services. The Georgia Rules of Professional Conduct speak to this very situation: "A lawyer should not accept representation in a matter unless it can be performed competently, promptly, . . . and to completion." Ga. Rules Prof. Conduct 1.16 cmt. 1.

Astoundingly, however, it appears Mr. Palazzola agreed to represent Plaintiff all the while knowing he had a conflict with the October 6 trial date—a conflict that made his presence at trial impossible. Mr. Palazzola argues that if the Court would have continued the case "for an hour" (this would be presumably based on Plaintiff's oral motion to continue) "and contacted" him, "it could have confirmed that [Plaintiff] would have an attorney present." [Doc. 103, p. 3]. Here's the kicker, though. Mr. Palazzola says, "[i]f need be" he could be present at trial "that same week," "although"

9

he would have requested a month-long continuance. [*Id.*]. That admission clearly shows that on one hand Mr. Palazzola was in no way ready to competently try Plaintiff's case since he wanted "a month" to get ready, and on the other, it clearly shows he had a conflict with the October 6 trial date. *See* Ga. Rules Prof. Conduct 1.16 cmt. 1. But enough about Mr. Palazzola's "effort," let's get to Plaintiff's Motion for New Trial. *See also* n.5, *infra*.

### C.    Plaintiff's Motion for New Trial

Plaintiff, now through an attorney, seeks a new trial pursuant to Federal Rule of Civil Procedure 59. Under Rule 59, a court may grant a motion for a new trial "for any reason for which a new trial has heretofore been granted in action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Plaintiff also points to *Gideon v. Wainwright*, 372 U.S. 335 (1963), ardently contending that a new trial is warranted to "ensure his right to counsel." [Doc. 103, p. 5]. Plaintiff doesn't have a right to counsel in this case, though.

In his motion, Plaintiff argues that when the Court ordered him "to proceed to trial without adequate legal counsel" on October 6, 2025, that was "a violation of his right to a fair trial" under the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment. [*Id.* at pp. 2–3]. But, even the most basic of competent legal research would have revealed that "the Sixth Amendment does not govern civil cases." *Turner v. Rogers*, 465 U.S. 431, 441 (2011).

The Sixth Amendment provides, "In all *criminal prosecutions*, the accused shall

enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI (emphasis added). Thus, "[t]he Sixth Amendment guarantees *criminal defendants* the right to [effective assistance of] counsel." *Spriggs v. United States*, No. 19-13238, 2022 WL 2345758, at *6 (11th Cir. June 29, 2022) (first citing U.S. Const. amend. VI; and then citing *Gideon*, 372 U.S. at 339–40, 343) (emphasis added); *see also Strickland v. Washington*, 466 U.S. 668, 686 (1984). Since *Plaintiff's* case is a *civil* matter, there is no constitutional right to counsel. *Cuff v. Fla. A&M Univ. Bd. of Trs.*, No. 23-12474, 2024 WL 4558807, at *2 (Oct. 23, 2024) (citing *Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999)); *see also* [Doc. 7, pp. 1–2]; [Doc. 31, p. 1]; [Doc. 56]; [Doc. 81]. As the Eleventh Circuit observed quite recently,

> The distinction between civil and criminal cases when it comes to appointing counsel is rooted in the gravity of each proceeding. In criminal cases, the Constitution guarantees the right to appointed counsel because what is at stake is a person's liberty, or even his life. The law recognizes that defending oneself against the government's power can be daunting. *See* [*Gideon*], 372 U.S. [at] 344–45 . . . . Civil cases, by contrast, usually involve disputes over property, contracts, or rights—important, yes, but they do not carry the same risk of a jail cell. So, the courts generally expect civil litigants to stand on their own, unless their situation is truly extraordinary. *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 26–27 (1981).

*Cuff*, 2024 WL 4558807, at *2 n. 1. As to the Due Process Clause of the Fourteenth Amendment, it's true that the amendment provides a right to counsel in civil proceedings that could lead to incarceration. *Turner*, 465 U.S. at 442–43 ("[A]n indigent's right to appointed counsel [in a civil proceeding] . . . has been recognized to exist only where the litigant may lose his physical liberty if he loses the litigation."). However,

11

individuals who, like Plaintiff, are already incarcerated and pursuing "straightforward" claims under § 1983 simply do not have a constitutional right to counsel. *Bass*, 170 F.3d at 1320. Sure, Mr. Palazzola's assistance might've helped Plaintiff better present his case, question his witness, and cross-examine Defendant Salad's witnesses, *see* [Doc. 103, p. 3], but "[s]imply needing help is not enough." *Cuff*, 2024 WL 4558807, at *2 (citing *Bass*, 170 F.3d at 1320).

Even assuming Mr. Palazzola did everything he should have, which the Court certainly doesn't think, but assuming he did, the real basis for Plaintiff's request for a new trial isn't because of Mr. Palazzola's CM/ECF or PACER issues. It's because Plaintiff waited until the last minute to retain counsel. After Plaintiff was acquitted of the criminal charges from Hancock County, the Court noticed trial for October 6, 2025, on August 12, 2025—just one day after the Court received Plaintiff's motion to reopen this case. [Doc. 76]; [Doc. 78]; [Doc. 79]; *see also* Notice of Setting Jury Trial, *Garrison v. Ivey*, No. 3:23-cv-00348-TES (M.D. Ga. Aug. 12, 2025). Put simply, as of mid-August 2025, Plaintiff knew his case was going to trial on October 6, 2025. Put even more simply, Plaintiff had 55 days to hire a lawyer, and even at the pretrial conference on September 4, 2025—32 days before trial—Plaintiff still hadn't retained an attorney.

As of January 13, 2025, Plaintiff knew that he was going to trial against Defendant Salad, but it wasn't until Friday, October 5, 2025, that the Court was notified about Plaintiff retaining Mr. Palazzola. [Doc. 64, p. 12]; *see* Notice of Setting Jury Trial,

12

*Garrison v. Ivey*, No. 5:23-cv-00348-TES (M.D. Ga. Jan 13, 2025). From when the Court denied Defendant Salad's summary-judgment motion, Plaintiff had more than eight months to hire a lawyer, and his effort to bring one into this case at the eleventh hour will not earn him a new trial. His motion is **DENIED**.[5]

The Court certainly understands that inmates like Plaintiff are undoubtedly hampered when it comes to obtaining counsel. However, once a court schedules a trial

---

[5] Due to Mr. Palazzola's failure to receive notice (via CM/ECF) of the Court's first hearing on Plaintiff's Motion for New Trial, set for November 18, 2025, the Court rescheduled a second hearing for December 4, 2025. *See* Notice of Setting Hearing, *Garrison v. Ivey*, No. 3:23-cv-00348-TES (M.D. Ga. Nov. 6, 2025); Notice of Setting Hearing, *Garrison v. Ivey*, No. 3:23-cv-00348-TES (M.D. Ga. Nov. 18, 2025). Since Mr. Palazzola was not present at the first hearing, the Court quickly sent him a Zoom link, and Mr. Palazzola was able to conference into the hearing. The Court then explained to Mr. Palazzola the reason he did not receive proper notice via CM/ECF. *But see* Email from Brian Goldberg to Courtroom Deputy (Nov. 6, 2025, at 3:42 P.M. ET) (on file with author) (confirming first hearing date of November 18, 2025, ***with Mr. Palazzola copied***). Apparently, the "Notice" box on his CM/ECF profile was unchecked. The Court confirmed this with the Clerk's CM/ECF Administrator, and with Mr. Palazzola *on the Zoom call*, the Court orally (and on the docket as well) rescheduled the hearing for 10:30 A.M. on December 4, 2025. *See* Notice of Setting Hearing, *Garrison v. Ivey*, No. 3:23-cv-00348-TES (M.D. Ga. Nov. 18, 2025). The Court even asked Mr. Palazzola if the rescheduled date worked with his calendar. He confirmed that it did.

However, come December 4, 2025, Mr. Palazzola was a no-show. The Court's staff called the phone number for Mr. Palazzola's law firm, tried to reach him through his paralegal's phone number, and even emailed him to figure out why he left Plaintiff—once again—in court and lawyerless. Email from Career Law Clerk to Christoper Palazzola (Dec. 4, 2025, at 11:14 A.M. ET) (on file with author) ("Mr. Palazzola, [w]e are in court, ready, and waiting on you. Your client, Danny Garrison, is here along with the State of Georgia who represents Defendant Salad. We are in court on Plaintiff's Motion for New Trial. Please call in immediately."). In that email, the Court provided the call-in number, and later that afternoon, the Court received a phone call and an email from Mr. Palazzola's paralegal claiming Mr. Palazzola "was not feeling well" and that he (the paralegal) had completely failed to call the Court and let it know that Mr. Palazzola had gone to the doctor. Email from Christoper Palazzola to Courtroom Deputy (Dec. 4, 2025, at 3:38 P.M. ET) (on file with author). The Court will assume that to be true. However, the responsibility of ensuring that the Court remains informed lies with the lawyer, not his staff. The Court's Local Rules provides that motions will usually be decided without a hearing. *See* LR 7.5, MDGa. However, the Court initially decided to schedule a hearing in this case due to Mr. Palazzola's citation to and reliance on a constitutional amendment and a case that clearly did not apply, *i.e.*, the Sixth Amendment and *Gideon v. Wainwright.* But, since the sole issue—the denial of a continuance—has been fully briefed, the Court sees no reason to reschedule the hearing.

and goes through the expense of calling in jurors, any litigant, including inmates, would have a very difficult time getting such a late continuance. Here, the Court had scheduled a trial, and jurors were present and ready. Mr. Palazzola knew that he couldn't attend a trial that day, but he still chose to undertake representing Plaintiff. In doing so, Mr. Palazzola assumed the risk that the trial would not be delayed. Any potential malpractice is between Mr. Palazzola and his client. Similarly, any potential bar misstep is between Mr. Palazzola and the State Bar of Georgia.

### D.    Conclusion

Notwithstanding what is, in this Court's opinion, a clear attempt to delay trial in this matter by bringing a lawyer on board just days before a scheduled jury trial, there is no right to counsel in a straightforward § 1983 prisoner suit such as this one. *Bass*, 170 F.3d at 1320. Neither Plaintiff nor his counsel offered any reason why the Court should have continued his case. As Defendant Salad puts it, this case was simply one where the jury had to decide whether it found him or Plaintiff more credible. [Doc. 106, p. 5].

Having resolved the sole issue raised, the Court **DENIES** Plaintiff's Motion for New Trial [Doc. 103].

**SO ORDERED**, this 4th day of December, 2025.

*S/ Tilman E. Self, III*
**TILMAN E. SELF, III**
**UNITED STATES DISTRICT JUDGE**